## LAPPIN BRAKE-SHOE CO. v. CORNING BRAKE-SHOE CO.

(Circuit Court, N. D. New York.   April 12, 1899.)

1. PATENTS—INVENTION—BRAKE SHOES.
   There is no patentable invention in chill-hardening the extremities of a brake shoe through the entire mass of the metal, instead of through only a fractional part thereof.

2. SAME—CONSTRUCTION OF CLAIMS.
   A claim which is simply for a brake shoe having the metal at its extremities chill-hardened through its entire mass, instead of only a fractional part thereof, cannot, for the purpose of sustaining it, have imported into it, by construction, the particular method by which the patentee produces the chill-hardening.

3. SAME—BRAKE SHOES.
   The Charles F. Wohlfarth patent, No. 543,072, for an improvement in brake shoes, is void for want of invention.

This was a suit in equity by the Lappin Brake-Shoe Company against the Corning Brake-Shoe Company for alleged infringement of patent No. 543,072, issued on July 23, 1895, to Charles F. Wohlfarth, for an improvement in brake shoes.   The cause was heard on demurrer to the bill.

Joseph D. Gallagher, for complainant.
Edmund Wetmore, for defendant.

COXE, J.   The bill makes profert of the patent, which is for an improvement in brake shoes.   The claim is for "a brake shoe having the metal at its extremities chill-hardened through the entire mass, in contradistinction to being hardened only through a fractional portion thereof: whereby at all times during the life of the shoe, the effects of abrasion are resisted by hard metal."   This is a claim for the device—qua a brake shoe—without the slightest reference to the method of producing it.   The specification states that the identical article covered by the claim has been produced before except that the chill, at the ends, has extended part way instead of the entire distance from surface to back.   The sole claim to invention must rest, therefore, upon the fact that the patentee made the chilled zone deeper than his predecessors.   At the argument it was conceded that a shoe having chilled metal at its extremities extending from surface to back, no matter how the chill was produced, would anticipate the claim if found in the prior art, and that such a shoe if made now would infringe.   In other words, the claim is for a brake shoe with a thicker sole at the ends than had been used before.   It is broad enough to cover a brake shoe chilled at its ends in any manner and by any process, whether the chill blocks are applied at the bearing surface, at the back, at the end, at the sides, or in all these ways combined.   It is not pretended that it involved invention to use the old chill block at the back of the shoe which was formerly applied to its surface or to use it at the end, or at the sides of the shoe.   All this would be the most simple mechanical work.   And yet a shoe chilled at its ends by any of these methods would be as much within the claim as if the blocks shown

in the drawings were used. Such a shoe would have the metal at its ends chill-hardened through the entire mass—the claim requires nothing more. That the claim is invalid, unless the method of producing the chill, as shown and described, is imported into it is hardly disputed. It is insisted, however, that this may be done and should be done. The claim would then read as follows:

"A brake shoe having the metal at its extremities chill-hardened through the entire mass by means of the chill blocks G and H adapted to inclose the shoe at the ends on all sides except the top," etc.

It is argued that such a chill box produces chill lines running both horizontally and vertically, thus preventing chill cracks and intensifying the chill. Assuming that this contention is susceptible of proof the difficulty is that the claim is not for a method but for a shoe. So far as the proposition now under discussion is concerned, it is as if the specification were absolutely silent on the subject of chill blocks. The claim permits the use of any chill blocks. Where the language of a claim is clear and simple there is no room for construction. The court is convinced that if the patentee has made an invention he has failed to claim it. No patentable novelty can be found in the claim as stated in the patent. The patentee might have claimed a process, he might have claimed a novel chill block; but he has done neither. The court is, therefore, prohibited from giving him a patent limited to an article produced by means of an alleged ingenious device which is not even mentioned in the claim. Were the rule otherwise it would be a dangerous menace to public rights which might be destroyed, not by the patent emanating from the patent office, but by a different patent subsequently granted by the court. Even were there more doubt as to the correctness of this conclusion the court would still be of the opinion that it is for the interest of both parties that the question should be definitely settled before they are required to incur the large expense of preparing for a final hearing. The demurrer is allowed.